**CLARK HILL LLP**
Myriah Jaworski (SBN 336898)
mjaworski@clarkhill.com
Elizabeth Evans (SBN 281190)
eevans@clarkhill.com
505 Montgomery Street, 13th Floor
San Francisco, CA 94111
Telephone:    (415) 984-8500
Facsimile:    (415) 984-8599

Chirag H. Patel (*pro hac vice*)
cpatel@clarkhill.com
130 E. Randolph St., Ste. 3900
Chicago, IL 60601
Telephone:    (312) 985-5900
Facsimile:    (312) 985-5999

Attorneys for Defendant 6SENSE INSIGHTS, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL AMBROZEWICZ, DEVIN FRANKE, MATTHEW HARTZ, NICOLE LAMONICA, EDWARD BELL AND MADELINE GARCIA, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, | Case No. 3:24-cv-07489 |
| Plaintiffs, | **DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| v. | Judge:    Honorable Richard Seeborg |
| 6SENSE INSIGHTS, INC., | Date: April 10, 2025<br>Time: 1:30 P.M.<br>Ctrm: 3 |
| Defendant. | Complaint Filed: Oct. 27, 2024 [ECF No. 1]<br>Trial Date:    None Set |

## <u>NOTICE OF MOTION AND COMBINED RULE 12 MOTION</u>

PLEASE TAKE NOTICE that on April 10, 2025 at 1:30 P.M., or as soon thereafter as the matter may be heard, before the Honorable Richard Seeborg, in Courtroom 3 of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant 6SENSE INSIGHTS, INC. ("6sense"), by and through its attorneys of record, will and hereby does move for an Order dismissing Plaintiffs' putative class action Complaint. [ECF No.1].

Defendant 6sense seeks an Order dismissing Plaintiffs' putative class action Complaint. [ECF No.1].

This Motion to Dismiss is based on Fed. R. Civ. Pro. 12(b)(1) and (b)(6). Plaintiffs' manufactured claims cannot be sustained in federal court and fail as a matter of law because Plaintiffs lack Article III standing, the Complaint seeks to expand application of the state right-of-publicity laws far beyond their intended scope and the Professional Directory information to which Plaintiffs object is protected by the First Amendment. For these reasons, Defendant 6sense respectfully requests that this Motion to Dismiss be granted.

This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities, the Declarations of Myriah V. Jaworski and Viral Bajaria, all pleadings, records, and files in this action, and any additional evidence or arguments that may be presented at the hearing.

Dated:    January 24, 2025                CLARK HILL LLP


By:_____/s/ Myriah V. Jaworski_____
        Myriah V. Jaworski
        Elizabeth Evans
        Chirag H. Patel
Attorneys for Defendant 6SENSE INSIGHTS, INC.

# <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................1

STATEMENT OF FACTS ...............................................................................................3

    I.    The 6sense Platform.......................................................................................3

    II.   DarrowAI is a Platform Used to Solicit Plaintiffs and Manufacture
        Claims. ........................................................................................................5

    III.  The Only "Unlocks" for Five of the Plaintiffs were by DarrowAI,
        and No Plaintiffs' Information Was Ever Shown in Conjunction
        with a Pop-Up Message. ..............................................................................6

LEGAL STANDARD.........................................................................................................7

ARGUMENT .....................................................................................................................8

    I.    PLAINTIFFS LACK ARTICLE III STANDING. ..................................8

        A.    The Conduct Allegedly Giving Rise to Plaintiff's "Injuries"
              Never Occurred.................................................................................9

        B.    Plaintiffs' Attempts to Manufacture Alleged Publicity
              Claims Are Not Fairly Traceable to 6sense. ................................11

        C.    "Doubt" and "Worry" are Not Legally Cognizable Injuries-
              In-Fact, Nor Are There Any Facts Which Support These
              Allegations. ...................................................................................11

    II.   ALL PLAINTIFFS FAIL TO STATE CLAIMS UNDER THE
        RIGHT OF PUBLICITY LAWS ...............................................................13

        A.    Even if five of the six Plaintiffs could establish Article III
              standing (they cannot), no plaintiff has stated a claim for
              violation of the Right of Publicity Laws, and those claims
              should be dismissed. The Right of Publicity Laws...................13

        B.    The Free Plan Does Not Violate Right of Publicity Laws.........14

        C.    As a Matter of Law, the DarrowAI Searches Are Not a
              "Commercial" Use. .......................................................................18

        D.    Any Alleged Use Was Incidental and Not Actionable. ..............19

    III.  THE FIRST AMENDMENT BARS PLAINTIFFS' CLAIMS...........20

DEFENDANT'S MOTION TO DISMISS AND MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT

IV.    THE CALIFORNIA PLAINTIFFS DO NOT ADEQUATELY
ALLEGE A VIOLATION OF CALIFORNIA'S UNFAIR
COMPETITION LAW ("UCL") (COUNT II). ......................................................23

CONCLUSION ........................................................................................................................25

DEFENDANT'S MOTION TO DISMISS AND MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AFL Philadelphia LLC v. Krause*,
   639 F.Supp.2d 512 (E.D. Pa. 2009) (Pennsylvania) ............................................................19

*Aldrin v. Topps Co., Inc.*,
   No. CV 10-09939 DDP FMOX, 2011 WL 4500013 (C.D. Cal. Sept. 27, 2011) ...................13

*Alfano v. NGHT, Inc.*,
   623 F.Supp.2d 355 (E.D.N.Y. 2009) (New York) ..............................................................19

*In re Apple Inc. Device Performance Litig.*,
   386 F.Supp.3d 1155, 1175-76 (N.D. Cal. 2019).................................................................24

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).............................................................................................................8

*Balsley v. LFP, Inc.*,
   2010 WL 11561844 (N.D. Ohio Jan. 26, 2010)..................................................................20

*Batis v. Dun & Bradstreet Holdings, Inc.*,
   No. 22-CV-01924-MMC, 2023 WL 1870057 (N.D. Cal. Feb. 9, 2023)
   (Chesney, J.) *aff'd*, 106 F.4th 932 (9th Cir. 2024)..............................................................15

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007).............................................................................................................7

*Bonilla v. Ancestry.com Operations, Inc.*,
   574 F.Supp.3d 582 (N.D. Ill. 2021) .............................................................................15, 16

*Brooks v. Thomson Reuters Corp.*,
   No. 21-CV-01418-EMC, 2021 WL 3621837 (N.D. Cal. Aug. 16, 2021) ........................13, 18

*Butt v. FD Holdings, LLC*,
   799 F. App'x 350 (6th Cir. 2020) .......................................................................................11

*C.B.C. Distribution & Mktg., Inc. v. Major League Baseball Advanced Media, L.P.*,
   443 F.Supp.2d 1077 (E.D. Mo. 2006), *aff'd*, 505 F.3d 818 (8th Cir. 2007)
   (Missouri)............................................................................................................................19

*Camacho v. Control Grp. Media Co., LLC*,
   No. 21-cv-1954, 2022 WL 3093306 (S.D. Cal. Jul. 18, 2022)............................................14

*Campbell v. Facebook Inc.*,
   77 F.Supp.3d 836 (N.D. Cal. 2014) ...................................................................................23

*Cardtoons, L.C. v. Major League Baseball Players Ass'n*,
  95 F.3d 959 (10th Cir. 1996) (Oklahoma) ................................................................19

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
  598 F.3d 1115 (9th Cir. 2010) ...................................................................................7

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ................................................................................................11

*Cohen v. Facebook, Inc.*,
  798 F. Supp. 2d 1090 (N.D. Cal. 2011) (Seeborg, J.) ..............................................12

*Cox Broadcasting Corp. v. Cohn*,
  420 U.S. 469 (1975) ................................................................................................22

*Data Disc, Inc. v. Sys. Tech. Assoc., Inc.*,
  557 F.2d 1280 (9th Cir. 1977) ...................................................................................7

*Davis v. Elec. Arts Inc.*,
  775 F.3d 1172 (9th Cir. 2015) .............................................................................19, 20

*Dex Media West, Inc. v. Seattle*,
  696 F.3d 952 (9th Cir. 2012) ...................................................................................21

*Dobrowolski v. Intelius, Inc.*,
  No. 17-cv-1447, 2018 WL 11185289 (N.D. Ill. May 21, 2018) .......................13, 17, 18

*Food & Drug Admin. v. All. for Hippocratic Med.*,
  602 U.S. 367 (2024) ..............................................................................................8, 17

*Fraley v. Facebook, Inc.*,
  830 F.Supp. 2d 785 (N.D. Cal. 2011) ......................................................................7, 8

*Fry v. Ancestry.com Operations Inc.*,
  No. 3:22-CV-140 JD, 2023 WL 2631387 (N.D. Ind. Mar. 24, 2023) ........................ *passim*

*Gardner v. Health Net, Inc.*,
  2010 WL 11597979 (C.D. Cal. Aug. 12, 2010) ..........................................................24

*Gearhart v. Express Scripts, Inc.*,
  422 F.Supp.3d 1217 (E.D. Ky. 2019) .......................................................................11

*Greenstein v. Noblr Reciprocal Exch.*,
  585 F.Supp.3d 1220 (N.D. Cal. 2022) ......................................................................12

*Hart v. TWC Prod. & Tech. LLC*,
  526 F.Supp.3d 592 (N.D. Cal. 2021) .......................................................................23

*In re Hearst Communications State Right of Publicity Statute Cases*,
  632 F.Supp.3d 616 (S.D.N.Y. 2022) ........................................................................14

DEFENDANT'S MOTION TO DISMISS AND MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT

*Henley v. Dillard Dep't Stores*,
   46 F.Supp.2d 587 (N.D. Tex. 1999) (Texas) ........................................................................19

*Herskowitz v. Apple Inc.*,
   940 F.Supp.2d 1131 (N.D. Cal. 2013) (Koh, J.) ..................................................................24

*Hoffower v. Seamless Contacts*,
   --- F.Supp. ---, 2024 WL 2882213 (N.D. Ill. June 7, 2024)......................................3, 9, 18, 19

*Holley v. Gilead Scis., Inc.*,
   410 F.Supp.3d 1096 (N.D. Cal. 2019) ...................................................................................7

*In re Howard*,
   69 Ill. 2d 343 (1977) ............................................................................................................11

*Hudson v. Datanyze, LLC*,
   702 F.Supp.3d 628 (N.D. Ohio Nov. 17, 2023).......................................................2, 19, 20

*IMDb.com Inc. v. Becerra*,
   962 F.3d 1111 (9th Cir. 2020) ......................................................................................21, 22

*Innovative Database Sys. v. Morales*,
   990 F.2d 217 (5th Cir. 1993) ...............................................................................................23

*Jordan v. Dominick's Finer Foods*,
   115 F.Supp.3d 950 (N.D. Ill. 2015) (Illinois) .....................................................................13

*Katz-Lacabe v. Oracle Am., Inc.*,
   668 F. Supp. 3d 928, 943 (N.D. Cal. 2023) .........................................................................23

*Kellman v. Spokeo, Inc.*,
   599 F.Supp.3d 877, 884 (N.D. Cal. Apr. 19, 2002)...............................................16, 18, 24

*Kis v. Cognism Inc.*,
   No. 22-CV-05322-AMO, 2024 WL 3924553 (N.D. Cal. Aug. 23, 2024)..................14, 15, 16

*Knapke v. PeopleConnect, Inc.*,
   553 F.Supp.3d 865 (W.D. Wash. 2021)...............................................................................14

*Krause v. RocketReach, LLC*,
   561 F.Supp.3d 778 (N.D. Ill. Sept. 21, 2021) .....................................................................16

*Kwikset Corp. v. Superior Ct.*,
   51 Cal.4th 310 (2011) ..........................................................................................................23

*Lane v. Random House, Inc.*,
   985 F.Supp.141 (D.D.C. 1995) (District of Columbia) ........................................................20

*Loo v. Toyota Motor Sales, USA, Inc.*,
   2019 WL 7753448 (C.D. Cal. Dec. 20, 2019) .....................................................................25

CASE NO.: 3:24-CV-07489

DEFENDANT'S MOTION TO DISMISS AND MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT

*Lujan v. Defs. Of Wildlife*,
  504 U.S. 555 (1992) ..................................................................................................8

*Mannacio v. Information.com LLC*,
  24-cv-01717-JSW, 2024 WL 5447678 (N.D. Cal. Oct. 22, 2024) ...................14, 15

*Marcus v. Apple Inc.*,
  2015 WL 151489 (N.D. Cal. Jan. 8, 2015) ...............................................................24

*Martinez v. ZoomInfo Techs, Inc.*,
  No. C21-5725 MJP, 2022 WL 1078630 (W.D. Wash. April 11, 2022) ....................16

*McCarthy v. United States*,
  850 F.2d 558 (9th Cir. 1988) ..............................................................................1, 7

*Nolen v. PeopleConnect, Inc.*,
  20-cv-09203, 2023 WL 4303645 (N.D. Cal. Jun. 30, 2023) ...........................14, 16

*Opperman v. Path, Inc.*,
  87 F.Supp.3d 1018 (N.D. Cal. 2014) ....................................................................7, 8

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
  No. 16-CV-01393-JST, 2017 WL 2672113 (N.D. Cal. Jan. 19, 2017) ....................8

*Pooley v. Nat. Hole–In–One Ass'n*,
  89 F.Supp.2d 1108 (D. Ariz. 2000) (New Jersey and California) ....................19, 20

*Pruchnicki v. Envision Healthcare Corp.*,
  845 F.App'x 613 (9th Cir. 2021) ............................................................................23

*Reed v. Town of Gilbert, Ariz.*,
  576 U.S. 155 (2015) ................................................................................................21

*Ridgeway v. Spokeo, Inc.*,
  697 F.Supp.3d 979 (C.D. Cal. 2023) ......................................................................10

*Safe Air for Everyone v. Meyer*,
  373 F.3d 1035 (9th Cir. 2004) ..................................................................................7

*In re Saladino*,
  71 Ill. 2d 263 (1978) ...............................................................................................11

*Sarver v. Chartier*,
  813 F.3d 891 (9th Cir. 2016) .............................................................................21, 22

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020) ..................................................................................25

*Sorrell v. IMS Health Inc.*,
  564 U.S. 552 (2011) ............................................................................................21, 22

*Spindler v. Seamless Contacts, Inc.*,
No. 4:22-CV-00787-KAW, 2022 WL 16985678 (N.D. Cal. Oct. 24, 2022) ....................15, 16

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)...............................................................................................................8

*Stayart v. Google Inc.*,
710 F.3d 719 (7th Cir. 2013) (Wisconsin) ...........................................................................19

*Taylor v. Westly*,
488 F.3d 1197 (9th Cir. 2007) ..............................................................................................12

*Thompson v. Getty Images (US), Inc.*,
No. 13-cv-1063, 2013 WL 3321612 (N.D. Ill. July 1, 2013) ................................................13

*TransUnion LLC v. Ramirez*,
594 U.S. 413 ....................................................................................................................10, 12

*United States v. Texas*,
599 U.S. 670 (2023)................................................................................................................8

*Upper Deck Co. v. Panini Am., Inc.*,
469 F.Supp.3d 963 (S.D. Cal. 2020) (California) .................................................................19

*Verde v. Confi-Chek, Inc.*,
21 C 50092, 2021 WL 4264674 (N.D. Ill. Sept. 20, 2021)...............................................9, 10

*Vinci v. Am. Can Co.*,
69 Ohio App. 3d 727 (1990) .................................................................................................20

*Vrdolyak v. Avvo, Inc.*,
206 F.Supp.3d 1384 (N.D. Ill. 2016) ...................................................................................21

*Vrdolyak v. Avvo, Inc.*,
206 F.Supp.3F.Supp.3d 1384, 1387 (N.D. Ill. 2016)........................................................3, 21

*Watts v. Enhanced Recovery Corp.*,
No. 10-CV-02606-LHK, 2010 WL 4117452 (N.D. Cal. Oct. 19, 2010)................................23

*White v. Samsung Elecs., Am., Inc.*,
971 F.2d 1395 (9th Cir. 1992) ..............................................................................................13

*Wilson v. Ancestry.com LLC*,
2024 WL 3992356 (S.D. Ohio Aug. 27, 2024)..........................................................3, 10, 18

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ......................................................................24

DEFENDANT'S MOTION TO DISMISS AND MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT

*Zacchini v. Scripps-Howard Broadcasting Co.*,
  47 Ohio St. 2d 224 (1976), *rev'd and remanded,* 433 U.S. 562 (1977) ...........................20, 22

*Zapata Fonseca v. Goya Foods Inc.*,
  2016 WL 4698942 (N.D. Cal. Sept. 8, 2016) ..........................................................................25

*In re Zoom Video Commc'ns Inc. Priv. Litig.*,
  525 F.Supp.3d 1017 (N.D. Cal. 2021) .....................................................................................24

**Statutes**

765 ILCS 1075/1 ...............................................................................................................9, 13

Cal. Bus. & Prof. Code § 17200 .........................................................................................3, 23

Cal. Bus. & Prof. Code § 17204 .............................................................................................23

Cal. Civ. Code § 3344.............................................................................................................22

Cal. Civ. Code § 3344(a) ....................................................................................................9, 13

Illinois Right of Publicity Act ("IRPA") .................................................................9, 15, 18, 21

Ind. Code § 32-36-1 *et seq.*...............................................................................................9, 13

Ohio Rev. Code § 2741.01 *et seq.* .....................................................................................9, 13

Right of Publicity Laws .........................................................................................................13

UCL..........................................................................................................................23, 24, 25

**Rules**

Fed. R. Civ. P. 9(b) ................................................................................................................24

Fed. R. Civ. P. 12 ....................................................................................................................3

Fed. R. Civ. P. 12(b)(1)....................................................................................................3, 7, 9

Fed. R. Civ. P. 12(b)(6)........................................................................................................3, 7

Fed. R. Civ. P. 12(h)(3)............................................................................................................7

**Constitutional Provisions**

U.S. Const. amend. I ................................................................................................3, 21, 22, 23

U.S. Const. art. III.......................................................................................................... *passim*

DEFENDANT'S MOTION TO DISMISS AND MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT

**Other Authorities**

Restatement (Third) of Unfair Competition § 47 ..........................................................................19

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

*"Don't let finding a good plaintiff stand in the way of your case's success."[1]* This is the promise of DarrowAI, the self-described "justice intelligence" company that runs an online platform that exists to service plaintiff-side law firms, like the firms representing Plaintiffs here, to "get qualified, motivated plaintiffs for your case – fast," and to "secure your class representatives with confidence."[2] DarrowAI accomplishes this by running "campaigns" on behalf of law firms to solicit individuals to bring attorney-contrived claims, and then takes action to manufacture those claims on the individual's behalf.

That is exactly what happened here. This case arose when DarrowAI[3] pretended to be a legitimate business customer of Defendant 6Sense Insights, Inc. ("6sense") to gain access to 6sense's proprietary business intelligence platform ("Platform") in order to search for and unlock the Plaintiffs' profiles in the Platform. Based on DarrowAI's actions, Plaintiffs file the instant federal court putative class action complaining that 6sense "used" their identifying information to advertise and promote upgrades to its Platform in violation of the California, Illinois, Indiana and Ohio state right-of-publicity laws. Plaintiffs' manufactured claims cannot be sustained in federal court and fail as a matter of law.

*First,* Plaintiffs lack Article III standing. On this *factual* challenge to standing, the Court need not accept as true Plaintiffs' allegations in the Complaint and may "review any evidence, such as affidavits and testimony. . . ." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). Contrary to Plaintiffs' "upon information and belief" allegation that their information was

---

[1] https://www.darrow.ai/products (last accessed Jan. 5, 2025).

[2] *See* nt. 1, *supra.*

[3] DarrowAI's surreptitious use of the Platform violated the Platform's Terms of Use by redistributing those materials to Plaintiffs and using them commercially and without permission in connection with this litigation. *See* https://6sense.com/terms-of-use/ (last accessed Jan. 6, 2025).

"searched for or viewed"[4] on the 6sense Platform, DarrowAI was the only Free Plan user to ever unlock all but one of the Plaintiffs' profiles. Because no other person has ever unlocked these five Plaintiffs' profiles, they have not suffered an injury. In short, Article III courts are meant to resolve real "cases" and "controversies," and should not be used to test attorneys' contrived legal theories or resolve intentionally manufactured claims. *See* Argument § I, *infra*.

**Second**, Plaintiffs' Complaint seeks to expand application of the state right-of-publicity laws far beyond their intended scope. The Platform is a private business product that allows business professionals to gain insights into prospective corporate clients. After registration, a Free Plan user (or, here, DarrowAI) may use "credits" to unlock professional contact information, much of which is already in the public domain. There is no dispute that businesses may lawfully sell products that include information about individuals, and no court has ever suggested that advertisement of such products is unlawful.

The crux of Plaintiffs' claims, then, is that 6sense's Free Plan uses their "identities" to entice users *via* a static banner ("Banner") and pop-up prompt to upgrade to a paid plan. But Plaintiffs are wrong. The Platform's professional directory (*i.e.*, the allegedly identifying professional contact information of the Plaintiffs) provided at the Free Plan level is **identical** to that provided at any of the paid levels. This is not a "teaser" or "preview" case where *additional insights* about an individual are promised to be revealed following an upgrade or separate product purchase. Rather, the only difference between the free and paid plans is the amount of monthly credits and business tools a user is provided. Other courts have correctly found this scenario to be a non-actionable "incidental use" under at least one of the states' Right-of-Publicity Laws. *See e.g., Hudson v. Datanyze, LLC*, 702 F.Supp.3d 628, 634 (N.D. Ohio Nov. 17, 2023).

There is also no allegation or evidence that DarrowAI's use of the Platform (again, the only Free Plan user to ever unlock any of the five of six Plaintiffs' information) prompted the display of the complained of pop-up message in conjunction with Plaintiffs' profiles. Compl. ¶¶ 36-37;

---

[4] Plaintiffs mischaracterize the 6sense Platform and its functionalities. The 6sense Platform allows users to apply filters and unlock profiles within the Professional Directory. Only the filters-applied and unlock data is logged by 6sense in the ordinary course of business. *See* Statement of Facts, *infra*.

Bajaria Decl. ¶ 41.[5] Thus, even under their own theory, Plaintiffs' claims fail. *Wilson v. Ancestry.com LLC*, 2024 WL 3992356 (S.D. Ohio Aug. 27, 2024) (dismissing plaintiff's right-of-publicity claim where his persona was never displayed next to any of the pop-up advertisements of which he complained). Further, none of the DarrowAI unlocks constitute an actionable "commercial use" under recent right-of-publicity precedent. *See e.g., Hoffower v. Seamless Contacts*, --- F.Supp. --- , 2024 WL 2882213 *5-6 (N.D. Ill. June 7, 2024); *Fry v. Ancestry.com Operations Inc.*, No. 3:22-CV-140 JD, 2023 WL 2631387, at *5 (N.D. Ind. Mar. 24, 2023). The Court should dismiss the entire Complaint for this reason alone. *See* Argument § II, *infra*.

*And last*, Plaintiffs' claims also cannot stand because the Professional Directory (defined below) information is protected by the First Amendment. *See e.g., Vrdolyak v. Avvo, Inc.*, 206 F.Supp.3F.Supp.3d 1384, 1387 (N.D. Ill. 2016) (granting motion to dismiss Illinois right-of-publicity claims under First Amendment). *See* Argument § III, *infra*. The Complaint's California Unfair Competition Law claim also fails because Plaintiffs fail to allege facts demonstrating either actual loss of money or property or actionable conduct. *See* Argument § IV, *infra*.

The Court should dismiss this case with prejudice under Rule 12(b)(1) and 12(b)(6).

## STATEMENT OF FACTS

### I.    The 6sense Platform.

6sense offers "a sales and marketing platform that employs artificial intelligence to help companies improve business-to-business ("B2B") transactions" ("Platform"). Compl. ¶ 2. "One of the features on [6sense's] Platform is a B2B contact database that [6sense's] customers can use to find potential buyers." Compl. ¶ 3.[6] The "B2B contact database" consists of "buyer discovery" and "contact & company data" (hereinafter "Professional Directory"). Compl. ¶ 20; Bajaria Decl. ¶ 6. This Professional Directory is updated regularly and may include the names and titles of individuals associated with a business, and their corporate contact information. Bajaria Decl. ¶ 7.

---

[5] 6sense's Rule 12(b)(1) Motion is supported by the Declaration of its Chief Technology Officer, Viral Bajaria, attached as Exhibit A and cited herein as "Bajaria Decl."

[6] For the purposes of a Rule 12 motion, 6sense quotes Plaintiffs' descriptions of its Platform in the Complaint. As set forth herein and in 6sense's Declarations, 6sense disputes Plaintiffs' characterizations of the Platform.

The 6sense Platform is not open to the public; a user must create an account with 6sense using their business email address and agree to 6sense's terms and conditions to register for access. Bajaria Decl. ¶¶ 8-10. Then, a user must select a pricing level. Bajaria Decl. ¶ 12. As it is intended for business use, the Platform's pricing levels and descriptions are "Based on Teams" (*i.e.*, the number of users) who intend to use the Platform (Compl. ¶ 23); pricing levels are single business users ("Free"), a team of users ("Team"), a division or larger business group ("Growth") or the entire corporate enterprise ("Enterprise"), Bajaria Decl. ¶ 14. In addition to an increase in licenses (or "credits") to the Platform provided at the Team, Enterprise and Growth pricing levels, these pricing levels also include tools that may be relevant to the business such as Platform integration into a business's CRM or sales engagement platform (SEP), a proprietary dashboard, campaign reporting functions and access to corporate "insights" like a company's buying history, job postings and corporate hierarchy (collectively, the "Business Tools"). Compl. ¶ 23; Bajaria Decl. ¶¶ 15-18.

Once 6sense grants a user access to its Platform *at any level* – Free, Team, Growth or Enterprise – they have **full access** to the "Buyer Discovery" and "Contact and Company Data" information which constitutes the Professional Directory. Compl. ¶ 25; Bajaria Decl. ¶ 19. In the Professional Directory, a user may apply "filters" to identify companies (most common) or individuals that are relevant to the user. Compl. ¶ 28. The user can use a credit to "unlock" the Professional Directory information available for an individual. Compl. ¶ 31; Bajaria Decl. ¶ 27. Clicking unlock on *any* plan (*i.e.,* **regardless of whether the user is using a Free, Team, Growth or Enterprise Plan**) will show the user the same Professional Directory profile. Bajaria Decl. ¶ 28. **To be clear, a paid plan does not provide any additional information about an individual that was not already available to the user at the Free Plan level**. Bajaria Decl. ¶ 29.

The Free Plan includes an in-Platform banner at the top of each page that states "Upgrade your plan to unlock more insights" ("Banner").  Compl. ¶¶ 33-38. The Banner is informational regarding the availability of additional Business Tools insights at other pricing levels. Bajaria Decl. ¶ 21. Team and Growth Plan level users are also made aware that they may upgrade their accounts to obtain access to more Business Tools. Bajaria Decl. ¶ 20.

Under the Free Plan, a user is allotted 50 "unlock" credits per month. Compl. ¶ 36. When a user attempts to unlock a profile in the Professional Directory *after* the user has expended their 50th credit, and *after* the full Professional Directory information for the 50th unlocked profile was fully displayed to the user, a pop-up message is dynamically created to inform the user that they are out of credits for that month. The pop-up message is informational and reads as follows: "You are out of credits. Upgrade to the SI Team Plan or wait for next month's credits" (the "Pop-Up Message"). Compl. ¶ 36; Bajaria Decl. ¶ 32.

6sense does not use any publicly available or public facing "teaser" pages, profile "previews," advertisements, emails or other communications that incorporate individuals' information. Bajaria Decl. ¶ 35. More specifically, **neither** the static Banner nor the Pop-Up Message "teases" or even mentions any individual's Professional Directory information. Bajaria Decl. ¶ 36; Compl. ¶¶ 36-38 (no allegation that upgrade prompts or emails include "teasers" with identity information).

## II. DarrowAI is a Platform Used to Solicit Plaintiffs and Manufacture Claims.

DarrowAI (https://www.darrow.ai) describes itself as a service that helps plaintiff attorneys to "get qualified, motivated plaintiffs" for their test cases:



Jaworski Decl. ¶ 6. Indeed, DarrowAI touts that its primary purpose is to help plaintiff's attorneys solicit test plaintiffs and "secure class representatives with confidence" in "5 easy steps": Jaworski Decl. ¶ 8.

Upon receipt of the Complaint, 6sense investigated all instances in which each Plaintiff's information was "unlocked" by a 6sense user. Bajaria Decl. ¶ 36. The investigation revealed that the only Free Plan user to ever unlock Plaintiffs Franke, Hartz, Lamonica and Bell's Professional Directory information was DarrowAI (https://www.darrow.ai). Bajaria Decl. ¶¶ 36-41. By its own public admissions, DarrowAI's use of the Platform (and unlocks of each Plaintiff's information) was at the direction of Plaintiffs' counsel and for the specific purpose of locating a "qualified, motivated plaintiff" to commence this litigation. Jaworski Decl. ¶ 9.

## III. The Only "Unlocks" for Five of the Plaintiffs were by DarrowAI, and No Plaintiffs' Information Was Ever Shown in Conjunction with a Pop-Up Message.

6sense's Platform logs every instance of an "unlock" of a contact by one of its users. Bajaria Decl. ¶ 38. These logs include: (a) date of unlock, (b) the email of the user who unlocked the information, (c) the individual whose professional contact information was displayed and (d) which of the user's 50 credits was expended to unlock that information. Bajaria Decl. ¶ 39. The following <u>Table 1</u> summarizes every unlock by a Free Plan user of each Plaintiff:

| Plaintiff | Alleged Residence | Total Free Unlocks | Unlock Date(s) | Credit (of 50) Used[7] | User of Unlock[8] |
|---|---|---|---|---|---|
| Ambrozewicz | CA | 4 | 5/23/23<br>6/4/23<br>6/25/23<br>8/6/24 | 43<br>21<br>4<br>16 | [User X]<br>[User Y]<br>[User Z]<br>almog.sasi@darrow.ai |
| Franke | CA | 1 | 8/5/24 | 6 | almog.sasi@darrow.ai |
| Hartz | IL | 1 | 8/6/24 | 8 | almog.sasi@darrow.ai |
| Lamonica | IL | 1 | 6/21/24 | 8 | almog.sasi@darrow.ai |
| Bell | OH | 1 | 8/21/24 | 9 | almog.sasi@darrow.ai |
| Garcia | IN | 1 | 8/26/23 | 12 | almog.sasi@darrow.ai |

---

[7] This column reflects the credit number, out of fifty (50) available monthly credits, that the Free Plan user utilized at the time they unlocked the Professional Directory profile for each Plaintiff.

[8] The email addresses of the three non-DarrowAI users were redacted for their privacy.

Bajaria Decl. ¶ 40; Compl. ¶¶ 9-14. The Platform does not create or display a Pop-Up Message during the use by a Free Plan user of its fifty (50) unlock credits. Accordingly, no Pop-Up Message was ever generated, existed or displayed on the Platform for the profile unlocks described in <u>Table 1</u>. Bajaria Decl. ¶ 42. [9]

## LEGAL STANDARD

**<u>Rule 12(b)(1).</u>** "If the court determines at any time that it lacks subject matter jurisdiction, the court *must* dismiss the action." Fed. R. Civ. P. 12(h)(3). "The party asserting subject matter jurisdiction bears the burden of establishing it." *Holley v. Gilead Scis., Inc.*, 410 F.Supp.3d 1096, 1100 (N.D. Cal. 2019). A Rule 12(b)(1) challenge to Article III standing may be facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Where the attack is facial, the court must accept all material allegations in the complaint as true and construe them in favor of the party asserting jurisdiction. *Fraley v. Facebook, Inc.*, 830 F.Supp. 2d 785, 793 (N.D. Cal. 2011). But where, as here, the attack is ***factual***, "the court need not presume the truthfulness of the plaintiffs' allegations." *Safe Air for Everyone*, 373 F.3d at 1039. "In resolving a factual dispute as to the existence of subject matter jurisdiction, a court may review extrinsic evidence beyond the complaint without converting a motion to dismiss into one for summary judgment . . . Once a party has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the opposing party bears the burden of establishing the Court's jurisdiction." *Fraley*, 830 F.Supp. at 793-794 (citing *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) (holding that a court "may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction"); s*ee also Chandler v. State Farm Mut. Auto. Ins. Co*., 598 F.3d 1115, 1122 (9th Cir. 2010). A district court may permit discovery to determine if it has subject matter jurisdiction. *Data Disc, Inc. v. Sys. Tech. Assoc., Inc*., 557 F.2d 1280, 1285 (9th Cir. 1977).

**<u>Rule 12(b)(6).</u>** "To survive a motion to dismiss, a plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Opperman v. Path, Inc*., 87 F.Supp.3d 1018, 1035 (N.D. Cal. 2014) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim

---

[9] Finally, all of Plaintiffs' information has been removed from the Platform. Bajaria Decl. ¶ 43.

has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "On a motion to dismiss, the Court accepts the material facts alleged in the complaint, together with all reasonable inferences to be drawn from those facts, as true." *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, No. 16-CV-01393-JST, 2017 WL 2672113, at *1 (N.D. Cal. Jan. 19, 2017) (citation omitted). However, the "tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

## ARGUMENT

## I.    PLAINTIFFS LACK ARTICLE III STANDING.

Article III standing is a "bedrock constitutional requirement." *United States v. Texas*, 599 U.S. 670, 675 (2023). A "general legal, moral, ideological, or policy objection" does not create Article III standing. *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 368 (2024) Nor does a "bare procedural violation" of a statute. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016).[10] On this *factual* 12(b)(1) challenge, this Court may consider extrinsic evidence, and the Plaintiffs bear the burden of demonstrating that this Court has subject matter jurisdiction over their claim. *Fraley*, 830 F.Supp. at 793-794.

***First***, Plaintiffs have no injury-in-fact under their right-of-publicity theory. Five of six Plaintiffs never had their information unlocked by a third party, and none of the Plaintiffs can demonstrate an injury for misappropriation of identity because there is no difference whatsoever in the Professional Directory information offered in 6sense's free and paid plans. *See* § (A), *infra*.

***Second***, Plaintiffs also fail Article III's traceability requirement because their information was reviewed exclusively by their own attorneys' agent, DarrowAI. *See* § (B), *infra*.

---

[10] Article III requires **each Plaintiff** to independently satisfy three irreducible requirements: (1) each suffered an injury-in-fact (*i.e.*, the invasion of a legally protected interest that is concrete and particularized, and actual or imminent, not conjectural or hypothetical) ("injury-in-fact"); (2) that their respective injuries-in-fact are fairly traceable to the challenged action of the defendant ("traceability"); and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision ("redressability"). *See Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560-561 (1992).

1    *And last*, conclusory allegations about "doubt" and "worry" are not legally cognizable

2    injuries, and Plaintiffs do not allege any facts to support them. *See* § (C), *infra*.

3    **A.    The Conduct Allegedly Giving Rise to Plaintiff's "Injuries" Never Occurred.**

4    Plaintiffs assert claims under the right-of-publicity statutes of California (Cal. Civ. Code §

5    3344(a)), Illinois (765 ILCS 1075/1 *et seq*.), Indiana (Ind. Code § 32-36-1 *et seq*.) and Ohio (Ohio

6    Rev. Code § 2741.01 *et seq*.) (collectively, the "Right-of-Publicity Laws"). Setting aside important

7    substantive distinctions among these state statutes, Article III has an equal demand for standing

8    under all four statutes. In this Rule 12(b)(1) *factual* challenge, Plaintiffs must show that the

9    disclosure of their information to a third party actually occurred. However, as a matter of both fact

10   and law, this never occurred for Plaintiffs Franke, Hartz, Lamonica, Bell and Garcia because their

11   information was unlocked only by DarrowAI.

12   **Plaintiff Garcia (Indiana – Count V).** In *Fry*, 2023 WL 2631387, at *5, the Northern

13   District of Indiana denied a *facial* Article III challenge to an Indiana right-of-publicity claim, but

14   noted that the plaintiff "[bore] the burden of establishing standing throughout the life of this

15   litigation." The Court then cautioned that if "the only uses of [plaintiffs] likeness in [defendants']

16   advertising" was the display to his own "attorneys during the investigation and preparation of the

17   Complaint," then plaintiff "would not have standing under his actual injury theory because his

18   injury would be entirely self-inflicted." *Id*. In other words, for Plaintiff to have standing, "the

19   offending conduct—the misappropriation of his likeness for commercial gain—*has to have*

20   *actually happened* at least one time." *Id*. (emphasis in original).

21   **Plaintiffs Hartz and Lamonica (Illinois – Count III)**. The Illinois Right-of-Publicity Act

22   ("IRPA") similarly requires a plaintiff to prove actual viewership by a third party. *Verde v. Confi-*

23   *Chek, Inc*., 21 C 50092, 2021 WL 4264674, at * 1, 4 (N.D. Ill. Sept. 20, 2021) (*TransUnion*

24   "require[s] . . . disclosure to a third party to allege a concrete injury caused by a violation of the

25   IRPA" and plaintiff failed to demonstrate that "any third party has entered her name and viewed

26   her information on defendant's website"); *see also Hoffower*, 2024 WL 2882213, at *5 (viewing

27   solely by party's own counsel fails IRPA's "commercial purpose" prong).

28

**Plaintiff Bell (Ohio – Count IV)**. In *Wilson*, 2024 WL 3992356 at *7, the district court held that the plaintiff failed to demonstrate an injury-in-fact under Ohio's right-of-publicity law because the "facts before the Court establish[ed] that the [alleged misappropriation of plaintiff's] likeness never existed, so the underlying alleged commercial use and misappropriation never occurred."

**Plaintiff Franke (California – Count I)**. In accordance with the cases above, *Ridgeway v. Spokeo, Inc.*, 697 F.Supp.3d 979, 984 (C.D. Cal. 2023), dismissed a right-of-publicity action holding that the plaintiff did "not sufficiently plead[] an injury in fact" because he failed to allege that "anyone actually searched for or viewed his teaser report." The court explained that rote allegations or parroting statutory elements alone is insufficient to demonstrate an Article III injury-in-fact:

> The Supreme Court has already held that merely pleading a statutory violation is not enough—on its own—to plead an injury and therefore establish standing. *See* [*TransUnion LLC*, 594 U.S. 413] (rejecting the proposition that "a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right").

*Id*. at 985. Thus a "conclusory assertion that [a defendant] 'used [his] name, image, and likeness to advertise its products'" is insufficient. *Id*.

Importantly, despite *Fry*, *Verde*, *Wilson* and *Ridgeway* addressing different state laws, they each reached the same conclusion as to a plaintiff's necessary showing to demonstrate an Article III injury-in-fact. Like *Fry*, *Verde*, *Wilson* and *Ridgeway*, this Court should find that showing an injury-in-fact for misappropriation of identity claim under any state statute requires that the alleged misappropriation *actually occurred*.[11] Under that framework, Plaintiffs Franke, Hartz, Lamonica, Bell, and Garcia all lack an injury-in-fact. Their conclusory allegations "upon information and belief" that their "identities" have been "searched for or viewed" (Compl. ¶¶ 68, 79, 90, 101, 112), are wholly disproven by 6sense's evidence that their information ***has never been unlocked by a***

---

[11] Some courts have rejected *facial* 12(b)(1) challenges, holding that *plausible* allegations demonstrating "a statutory right of publicity violation is sufficient to *plead* Article III standing. All of those cases are inapposite because this is a ***factual*** challenge that demonstrates that – as a matter of fact - no injury has occurred.

**Free Plan user _at all_ on the 6sense Platform,** except to their attorneys using DarrowAI. Bajaria Decl. ¶ 41. As explained above and below, viewership exclusively by Plaintiffs' counsel's agent DarrowAI on a Free Plan for the purpose of manufacturing this litigation does not confer an injury-in-fact because that "injury [is] entirely self-inflicted." *Fry*, 2023 WL 2631387, at * 5. This Court should dismiss Plaintiffs Franke, Hartz, Lamonica, Bell, and Garcia's claims because they have no injury-in-fact.

> **B.      Plaintiffs' Attempts to Manufacture Alleged Publicity Claims Are Not Fairly Traceable to 6sense.**

Plaintiffs Franke, Hartz, Lamonica, Bell, and Garcia's attempt to self-inflict a right-of-publicity injury also fails Article III's traceability requirement. Indeed, when plaintiff's counsel causes the very injury alleged in the complaint, that alleged injury is not "fairly traceable" to the defendant. *See Butt v. FD Holdings, LLC*, 799 F. App'x 350, 353 (6th Cir. 2020) ("[a]ny injury that [the plaintiff] conceivably suffered was therefore self-inflicted, which means that it was not 'fairly traceable to the challenged conduct of the defendant.'") (citation omitted); *Gearhart v. Express Scripts, Inc*., 422 F.Supp.3d 1217, 1223-24 (E.D. Ky. 2019) ("Plaintiff's alleged injury does not result from any conduct of [the defendant]); *see also Fry*, 2023 WL 2631387 at *5 (explaining that it "defies all logic" to permit a plaintiff to "manufacture standing by inflicting harm on themselves" based exclusively on "advertising occur[ing] only to [her] attorneys for the purpose of litigation" (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013)); *see also In re Saladino*, 71 Ill. 2d 263, 276 (1978) (attorneys cannot expose client to risk of privacy interests or pecuniary loss); *In re Howard*, 69 Ill. 2d 343, 354 (1977) (attorneys cannot harm client to advance self-interest). As established above, any conceivable injury based on DarrowAI viewing Franke, Hartz, Lamonica, Bell, and Garcia's information on the Platform is self-inflicted and not traceable to 6sense.

> **C.      "Doubt" and "Worry" are Not Legally Cognizable Injuries-In-Fact, Nor Are There Any Facts Which Support These Allegations.**

Finally, each of the Plaintiffs' unsubstantiated and identical allegations that they have been deprived of the "economic value" and "ability to control" their "identity" and "doubt and worry" about how their "identity" will be used does not demonstrate Article III standing. Compl. ¶¶ 56,

67, 78, 89, 100, 111. As established above, Article III standing requires evidence that a third party viewed a commercial advertisement containing a plaintiffs' information; conclusory allegations of "doubt and worry" and loss of control of identity without third party disclosure is insufficient. *Cohen v. Facebook, Inc.*, 798 F. Supp. 2d 1090, 1097 (N.D. Cal. 2011) (Seeborg, J.).

In *Cohen*, this Court held that conclusory allegations of "injury to their feelings," "mental anguish" and commercial loss are insufficient to demonstrate an injury-in-fact for a California right-of-publicity claim. This Court further explained that plaintiffs asserting a right-of-publicity claim "must, at a minimum, plead that they suffered mental anguish as a result of the alleged misappropriation, *and a plausible supporting factual basis for any such assertion*." *Id*. (emphasis added). Thus, the plaintiffs' allegation that their information was shown to their Facebook friends was insufficient to demonstrate any cognizable harm. *Id*.

Here, Plaintiffs neither demonstrate how the alleged unlocks of their publicly available business contact information caused them any harm nor provide a plausible factual basis to support their conclusory injury claims of "doubt and worry" and loss of "economic value." Each Plaintiff's harm allegation is a copy-and-paste identical to the others, and none provide supporting *factual* allegations showing any real injury caused by "doubt and worry" or that any Plaintiff suffered any actual economic loss. *See e.g.*, *Greenstein v. Noblr Reciprocal Exch.*, 585 F.Supp.3d 1220, 1229 (N.D. Cal. 2022) (plaintiff claiming economic loss for the value of his or her information must "establish both the existence of a market for [the] personal information and an impairment of [the] ability to participate in that market" (internal citation omitted)).

Finally, these allegations also do not support Plaintiffs' claims for prospective injunctive relief. *See* Compl. at p. 29 (Prayer for Relief ¶ E). "[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing . . . for each form of relief that they seek." *TransUnion*, 141 S.Ct. at 2208. "To demonstrate standing to pursue prospective injunctive relief, plaintiffs must demonstrate a concrete injury and a realistic likelihood *that the injury will be repeated*." *Taylor v. Westly*, 488 F.3d 1197, 1199 (9th Cir. 2007) (emphasis added). Plaintiffs lack concrete injury for the reasons stated above. Even if one did occur, it could not be repeated because 6sense has removed Plaintiffs' information from the Platform. Bajaria Decl. ¶ 43.

## II.    ALL PLAINTIFFS FAIL TO STATE CLAIMS UNDER THE RIGHT-OF-PUBLICITY LAWS

### A.    Even if five of the six Plaintiffs could establish Article III standing (they cannot), no plaintiff has stated a claim for violation of the Right-of-Publicity Laws, and those claims should be dismissed.

While the Right-of-Publicity Laws have important and material differences,[12] they are each rooted in a common law protection against businesses claiming that an individual – ordinarily a celebrity – had endorsed their products or services without the individual's consent.[13] To this end, and for purposes of this Motion only, the Right-of-Publicity Laws may collectively be characterized as prohibiting: the (1) "use," (2) of the plaintiff's "identity," "personality," or "persona," (3) for a commercial purpose such as endorsement, promotion or advertisement, (4) without the plaintiff's consent and (5) resulting in injury. *See generally* Cal. Civ. Code § 3344(a), 765 ILCS 1075/1 *et seq.*, Ind. Code § 32-36-1 *et seq.*, Ohio Rev. Code § 2741.01 *et seq.*

Courts have recognized that a business does not violate the Right-of-Publicity Laws when it sells a product that includes information about individuals or offers access to "the exact thing [the company] seeks to sell." *Thompson v. Getty Images (US), Inc*., No. 13-cv-1063, 2013 WL 3321612, at *2 (N.D. Ill. July 1, 2013); *Dobrowolski v. Intelius, Inc*., No. 17-cv-1447, 2018 WL 11185289 (N.D. Ill. May 21, 2018). Rather, for a use to be actionable, the advertisements or promotions must use a plaintiff's identity, without consent, "*to advertise or promote a separate product or service*." *Brooks v. Thompson Reuters Corp*., No. 21-cv-01418-EMC, 2021 WL 3621837, at *4 (N.D. Cal. Aug. 16, 2021) (Chen, J.) ("[v]irtually all right of publicity cases involve

---

[12] These differences are described further in 6sense's contemporaneously filed Motion to Strike. [Dkt. 27].

[13] "[T]he Ninth Circuit and the California Supreme Court have explained that the right of publicity was conceived and is most often applied to protect against the unauthorized use of celebrities' name and likeness to advertise or promote a product or service." *Brooks v. Thomson Reuters Corp*., No. 21-CV-01418-EMC, 2021 WL 3621837 at *3 (N.D. Cal. Aug. 16, 2021) (citing *White v. Samsung Elecs., Am., Inc*., 971 F.2d 1395, 1396 (9th Cir. 1992) ("The right of publicity was developed to protect the commercial interest of celebrities in their identities. The theory of the right is that a celebrity's identity can be valuable in the promotion of products.")). Indeed, prominent examples include Michael Jordan's lawsuit against two national grocery chains, *Jordan v. Dominick's Finer Foods*, 115 F.Supp.3d 950 (N.D. Ill. 2015) (Illinois), and Neil Armstrong's lawsuit against Hallmark (and later the Topps Company), *Aldrin v. Topps Co., Inc*., No. CV 10-09939 DDP FMOX, 2011 WL 4500013 (C.D. Cal. Sept. 27, 2011).

the use of a person's name or likeness to advertise *a separate product or service*" (emphasis added)); *Camacho v. Control Grp. Media Co.*, *LLC*, No. 21-cv-1954, 2022 WL 3093306, at *25 (S.D. Cal. Jul. 18, 2022) ("[a] review of the cases finding that commercial speech violates the right of publicity strongly suggests that advertisements are actionable when the plaintiff's identity is used, without consent, to promote an *unrelated* product" (emphasis in original)). This requirement is not met here.

### B.    The Free Plan Does Not Violate Right-of-Publicity Laws.

The handful of cases that have expanded Right-of-Publicity Laws to online database products all included certain factors ***that are not present here***. Indeed, it is important to clarify what the Plaintiffs do not – because they cannot – allege:

- **The Platform is Not Publicly Available**: Plaintiffs admit that the 6sense Platform is not public facing or publicly searchable. Compl. ¶ 22. They do not – and cannot – allege that 6sense uses "teaser profiles," "preview pages," "public landing" or marketing pages that contain any promotional material adjacent to an individual's identity information. *Id*. This factor alone differentiates this case from others that have held that a defendant commercially used a plaintiff's identity "the moment the image became a publicly accessible part of defendant's advertising flow." *See e.g., Nolen v. PeopleConnect, Inc.*, 20-cv-09203, 2023 WL 4303645, * 2 (N.D. Cal. Jun. 30, 2023) (finding a commercial use when the plaintiff's image was placed "on the open Internet . . ."); *Mannacio v. Information.com LLC*, 24-cv-01717-JSW, 2024 WL 5447678, *4 (N.D. Cal. Oct. 22, 2024) (White, J.) (endorsing *Nolen* and holding that a defendant publishes a plaintiff's name and image in violation of California's Right-of-Publicity Law when "it made its website publicly available"); *Kis v. Cognism Inc.*, No. 22-CV-05322-AMO, 2024 WL 3924553, at *4 (N.D. Cal. Aug. 23, 2024) (Martínez-Olguín, J.) (alleging defendant offers a "publicly accessible" search page on which website visitors may search for individuals by name); *see also In re Hearst Communications State Right of Publicity Statute Cases*, 632 F.Supp.3d 616, 625 (S.D.N.Y. 2022) ("[w]hat [p]laintiffs fail to engage with, however, is the fact that the offending image [in *Knapke v. PeopleConnect, Inc.*, 553 F.Supp.3d 865 (W.D. Wash. 2021)] was still posted on the internet – 'which is available to the public at large' – and it was used to market defendant's products and

services through that public platform"). Here, the Platform is private, proprietary and intended for verified business users; it is not available to the public at large or otherwise "placed on the open Internet." *Mannacio,* 2024 WL 5447678, *4. Rather, a user must select a pricing level appropriate to the business's needs (Free, Team, Growth or Enterprise), register an account with 6sense with a business email address, agree to 6sense's terms and conditions and confirm their business email before receiving access to the Platform. Compl. ¶ 22; Bajaria Decl. ¶ 10.

- **No Free Trial is Offered**. Second, the Free Plan is not alleged to be nor is it a free trial. A Free Plan user may use the Platform indefinitely. Bajaria Decl. ¶ 30. There is no trial expiration, or other temporal pressure to advance to a different pricing level. When a Free Plan user's monthly "unlock" credit allotment runs out, the user is simply informed: "You are out of credits. Upgrade to the SI Team plan *or wait for next month's credits*." Compl. ¶ 36 (emphasis added). This is distinct from the free trials found actionable in other cases from this District, such as *Spindler v. Seamless Contacts, Inc.*, No. 4:22-CV-00787-KAW, 2022 WL 16985678, *1 (N.D. Cal. Oct. 24, 2022) (Westmore, J.) (describing how once a user's free trial runs out "they *must* purchase a subscription plan" to access more profiles) (emphasis added); *Batis v. Dun & Bradstreet Holdings, Inc.*, No. 22-CV-01924-MMC, 2023 WL 1870057, *1 (N.D. Cal. Feb. 9, 2023) (Chesney, J.) *aff'd*, 106 F.4th 932 (9th Cir. 2024) (describing how complained of free trial "typically" lasted for twenty-four hours and that when free trial users attempt to download a profile or access the platform after the free trial "they are informed they must purchase a subscription"); *Kis*, 2024 WL 3924553, at *5 (plaintiffs "allege[d] that [defendant] use[d] his name and likeness in a free trial, which offers potential subscribers limited information and profile downloads [which was] distinct from the platform itself"); *Bonilla v. Ancestry.com Operations, Inc.*, 574 F.Supp.3d 582 (N.D. Ill. 2021) (allowing IRPA claim to proceed where defendant offered 14-day free trial to a limited version of its yearbook database).

- **No Professional Directory Information is Withheld**. Equally important, no Professional Directory information is withheld at the Free Plan level. Plaintiffs concede this point, as they must. Compl. ¶ 25 ("'Buyer Discovery'" and 'Contact & Company' data are two of the features available under the Free Plan"). **This undisputed fact separates this case from every**

**other right-of-publicity case against an online informational platform that has survived a challenge to the pleadings**. In that line of cases, an individual's information is either blurred or partially redacted during a free trial ("teased"), or marketing or other language exists to indicate that a company "possesses additional information" about a specific individual or that there is "more to see" about a person if the user purchases a full profile or subscription. *See e.g., Kellman v. Spokeo, Inc.*, 599 F.Supp.3d 877, 884 (N.D. Cal. Apr. 19, 2002) (Orrick, J.) ("[t]o advertise paid subscriptions to the site, Spokeo uses 'teasers' – profiles of real people with some information redacted"); *Martinez v. ZoomInfo Techs, Inc.*, No. C21-5725 MJP, 2022 WL 1078630, at * 1 (W.D. Wash. April 11, 2022) ("[defendant] displays 'teaser profiles' showing some information about the individual and offering 'full access' in exchange for a fee-based subscription"); *Nolen*, 2023 WL 4304645, *7 (same); *Kis,* 2024 WL 3924553, *5 (noting that "intent data" about plaintiff such as the individual's "internet browsing history" was withheld in free trial offering); *Spindler v. Seamless Contacts, Inc.*, No. 4:22-CV-00787-KAW, ECF No 1 (Complaint) ¶ 10  (describing withheld data as "tools through which [defendant] will provide *additional personal information* about the subscriber's existing list of sales prospects" (emphasis added)); *Krause v. RocketReach, LLC*, 561 F.Supp.3d 778 (N.D. Ill. Sept. 21, 2021) (same). Where the former instances might be actionable as a commercial use, 6sense's Free Plan – where Professional Directory information (which is the *only* information about an individual that exists in the Platform) is fully displayed and is not redacted, blurred or otherwise withheld – is not.

- **No Actionable Advertisement is Alleged, or Ever Occurred**. While the Complaint is replete with conclusory allegations that 6sense "used" Plaintiff's identities in connection with "advertisements" and to "promote the sale of paid subscriptions" (Compl. ¶¶ 35, 39), it is exceptionally light on actual facts showing how this occurred. At best, it appears that Plaintiffs take issue with a passive "Upgrade your plan" Banner that is located at the top of the page Compl. ¶ 33. First, the passive Banner is materially different from the active enticements which have been found actionable, such as exhortations that there is "more to see" about a specific person, or instances where dynamic advertisements are created in real time using a plaintiff's name

and other identifying information. *See Kellman*, 599 F.Supp.3d at 885; *Bonilla*, 574 F.Supp.3d at 587-88. The Court may reject Plaintiffs' right-of-publicity claims on this basis alone.

Next, and more importantly, in the context of online information platforms, an individual's information has been found to have been used to "entice" or "advertise" only in instances where the user is promised more information *about that individual* if they make some purchase. **This does not occur here**. The Banner is displayed to a Free Plan user ***at the top of every page*** while in the Platform. The Banner is neither associated with nor incorporates any individual's information at all, it is informational and generically displayed.[14] This is not actionable. *See Dobrowolski*, 2018 WL 11185289, at *3 ("The plaintiffs' identities are not used to promote a separate product—they are used because plaintiffs' identities are part of the product offered for sale. And this is not a commercial purpose as defined by the statute.").

- **The Complained of Pop-Up Message Never Existed.** Last, the Complaint describes how ***after*** the 50th unlock, a pop-up message is generated that informs a Free Plan user that: "You are out of credits. Upgrade to the SI Team Plan or wait for next month's credits." Compl. ¶¶ 36-37. Plaintiffs' theory appears to be that *if* this pop-up message is created and appears on the same screen as information identifying a person, it is an 'advertisement' in violation of the Right-of-Publicity Laws. Even assuming this is correct - it is not - the Complaint does not allege that the pop-up message was ever created and displayed next to *any* of the Plaintiffs' information, Compl. ¶¶ 36-38. And, in fact, no pop-up could or did exist in conjunction with the unlocks of Plaintiff's profiles. Bajaria Decl. ¶ 31. "If the action that [plaintiff] complains of never occurred in the first instance, it cannot form the basis of his [right of publicity] claims . . . the Court finds that the Pop-Up never existed." *Wilson*, 2024 WL 3992356 at *5 (dismissing right-of-publicity class action where the "pop-up" advertisements plaintiff alleged were shown in connection with his personal information were never in fact generated or existed).

---

[14] Further, when a user actually clicks on the Banner's "upgrade" hyperlink, they are taken to the feature comparison page, (Compl. ¶ 23; Bajaria Decl. ¶ 23), which clearly shows that any additional "insights" obtained through an upgrade do not pertain to any individual person, but are instead Business Tools.

At bottom, Plaintiffs' Complaint is an attempt to impose liability on 6sense because their Professional Directory information is part of the 6sense Platform. However, courts have consistently held that there is no liability where the individual's information itself *is the product*. *Brooks*, 2021 WL 3621837, at *3-5 (dismissing right-of-publicity actions where [defendant's] "dossier" of plaintiffs' information, which included names, criminal history and social network information, was itself the product); *Dobrowolski*, 2018 WL 11185289, at *3 ("[t]he plaintiffs' identities are not used to promote a separate product – they are used because plaintiffs' identities are part of the product offered for sale"). In the line of cases allowing right-of-publicity claims to proceed against online platforms relating to their display of a person's information, that individual's information was used to coax a customer into making a purchase that will ***reveal more information about that same individual*** (*i.e.*, a "teaser"). *Kellman*, 599 F.Supp.3d at 885. Plaintiffs' own allegations demonstrates that this does not occur here. This Court should dismiss Plaintiffs' misappropriation of identity claims with prejudice.

## C.    As a Matter of Law, the DarrowAI Searches Are Not a "Commercial" Use.

Should the Court accept any of Plaintiffs' theories of right-of-publicity liability against 6sense for its Platform's Free Plan, it must still dismiss those claims because for five of the named Plaintiffs, the only time their information was ever "unlocked" by a Free Plan user was by DarrowAI on behalf of Plaintiffs' counsel. Bajaria Decl. ¶ 41. An attorney viewing their client's information to prepare the very complaint at issue is not actionable as a matter of law. *Hoffower*, 2024 WL 2882213 at *6 ("[t]he Court cannot endorse a reading of IRPA that permits a plaintiff to obtain relief based on her own attorney making a direct request for, and then obtaining, the plaintiff's identifying information"); *Wilson*, 2024 WL 3992356 at *6 ("[plaintiff] cannot survive summary judgment [on his right of publicity claim where] these advertisements were created in response to his attorney's actions, not a potential subscriber's. As [defendant] notes, one's own attorney cannot create the harm forming the basis of his complaint."); *Fry*, 2023 WL 2631387 at * 5 ("advertising . . . only to [plaintiff]'s attorneys for purposes of the litigation " is insufficient).

*Hoffower* is directly on point. There, the defendant demonstrated through event logs that the plaintiff's former attorney was the only person to ever click the "find" button on a search result

entry of the plaintiff's name. *Hoffowe*r, 2024 WL 2882213 *5 (N.D. Ill. Jun. 7, 2024). While the plaintiff argued that other searches of her name were theoretically possible, the court dismissed her right-of-publicity claim, noting that "identifying a metaphysical doubt as to the material facts" was insufficient to show a commercial use and that "[Plaintiff's] claims regarding her information . . . are based entirely on speculation and not on any admissible evidence in the record." *Id.* Here, five Plaintiffs' information was only unlocked by their own counsel. Bajaria Decl. ¶ 41. Plaintiff Franke, Hartz, Lamonica, Bell and Garcia's right-of-publicity claims must be dismissed.

### D. Any Alleged Use Was Incidental and Not Actionable.

"The incidental use defense . . . to right-of-publicity claims . . . is widely recognized." *Davis v. Elec. Arts Inc*., 775 F.3d 1172, 1180 n.5 (9th Cir. 2015); s*ee* Restatement (Third) of Unfair Competition § 47 (advertising "that is incidental" to commercial use is not actionable). Courts accordingly have consistently applied the "incidental use" defense to various state Right of Publicity Laws. *See Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 95 F.3d 959, 968 (10th Cir. 1996) (Oklahoma); *Stayart v. Google Inc*., 710 F.3d 719 (7th Cir. 2013) (Wisconsin); *Datanyze,*702 F.Supp.3d at 632-33 (N.D. Ohio 2023) (Ohio); *Upper Deck Co. v. Panini Am., Inc*., 469 F.Supp.3d 963, 986 (S.D. Cal. 2020) (California); *Pooley v. Nat. Hole–In–One Ass'n*, 89 F.Supp.2d 1108, 1112 (D. Ariz. 2000) (New Jersey and California); *Alfano v. NGHT, Inc*., 623 F.Supp.2d 355, 360 (E.D.N.Y. 2009) (New York); *AFL Philadelphia LLC v. Krause*, 639 F.Supp.2d 512, 531 (E.D. Pa. 2009) (Pennsylvania); *C.B.C. Distribution & Mktg., Inc. v. Major League Baseball Advanced Media, L.P*., 443 F.Supp.2d 1077, 1086 (E.D. Mo. 2006), *aff'd*, 505 F.3d 818 (8th Cir. 2007) (Missouri); *Henley v. Dillard Dep't Stores*, 46 F.Supp.2d 587, 594 n.6 (N.D. Tex. 1999) (Texas); *Lane v. Random House, Inc*., 985 F.Supp.141, 147 (D.D.C. 1995) (District of Columbia).[15]

The "mere incidental use of a person's name or likeness is not actionable in an appropriation claim," even if the defendant seeks to profit from such use and even if the use is

---

[15] And the list goes on. Notably, federal courts have recognized the defense even where a state court has not expressly endorsed the statute. *Davis*, 775 F.3d at 1180 n.5 (9th Cir. 2015) (applying defense even though "California courts have not yet held that the incidental use defense applies" because it is "widely recognized" by courts across the country).

deliberate. *Hudson*, 702 F.Supp.3d at 632-33 (internal citations omitted); *see also Zacchini v. Scripps-Howard Broadcasting Co*., 47 Ohio St. 2d 224, 230 n.4 (1976), *rev'd and remanded,* 433 U.S. 562 (1977). "The rationale underlying this doctrine is that an incidental use has no commercial value, and allowing recovery to anyone briefly depicted or referred to would unduly burden expressive activity." *Pooley,* 89 F.Supp.2d at 1112. A use is non-incidental – and thus actionable – only if it implies that the plaintiff endorses, supports, or promotes the product or services in question. *Hudson*, 702 F.Supp.3d at 634; *see also Vinci v. Am. Can Co*., 69 Ohio App. 3d 727, 729 (1990)("purely informational" printing image and information of Olympic athletes was incidental use); *Balsley v. LFP, Inc*., 2010 WL 11561844 at *9 (N.D. Ohio Jan. 26, 2010) ("[t]he use of the photograph . . . does not imply that she uses, supports, or promotes [defendant's product].").

In *Datanyze*, 702 F.Supp.3d at 634, the Northern District of Ohio explained that "the publication of [p]laintiffs' information, with no implication that they use, support, or promote the product, in [d]efendant's database, which purportedly contains 120 million profiles, appears incidental," especially where the plaintiffs did not allege any "intrinsic value, reputation or prestige in their personas." Here, too, Plaintiffs do not allege that 6sense has ever represented that the Plaintiffs themselves use, support or promote the Platform. Additionally, Plaintiffs admit that their professional profiles are one of "449 million [other] buyer profiles" on the Platform (Compl. ¶ 26), and they do not allege that their specific profile has any intrinsic value, prestige or reputation. As Plaintiffs' information is included in a Professional Directory that by their own admission contains hundreds of millions of other profiles, their information, and Defendant's alleged use of it, is incidental under *Datanyze*, which this Court should adopt.

At its core, the Plaintiffs allege that 6sense included information about them as part of its product, which it then offered for sale. Compl. ¶ 31. That is textbook permissible incidental use and falls short of a cognizable right-of-publicity claim under the Right-of-Publicity Laws.

## III.    THE FIRST AMENDMENT BARS PLAINTIFFS' CLAIMS.

Content-based regulations like the Right-of-Publicity Laws that "target speech based on its communicative content," such as the use of an individual's persona or identity, are "presumptively unconstitutional." *Reed v. Town of Gilbert, Ariz*., 576 U.S. 155, 163 (2015); *Sorrell v. IMS Health*

*Inc.*, 564 U.S. 552, 571 (2011); *Sarver v. Chartier*, 813 F.3d 891, 903 (9th Cir. 2016) ("California's right-of-publicity law clearly restricts speech based upon its content"). Plaintiffs "bear[] the burden of demonstrating the constitutionality" of their proposed application of those laws, *IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1120 (9th Cir. 2020), and they do not meet it here.

First, courts have repeatedly held that directories of names, phone numbers and job details – the exact information in the Professional Directory – are "non commercial speech" that is entitled to fulsome protection under the First Amendment. *Dex Media West, Inc. v. Seattle*, 696 F.3d 952, 957 (9th Cir. 2012); *Vrdolyak v. Avvo, Inc.*, 206 F.Supp.3d 1384, 1387 (N.D. Ill. 2016) (dismissing IRPA claim in violation of First Amendment). In *Vrdolyak*, the court applied this principle to dismiss IRPA claims against an online platform containing information on lawyers, holding that the directory information contained in the platform was non-commercial speech and analogized it to other publications containing "information about individuals . . . such as newspaper or yellow page director[ies]." *Id.* at 1388; *accord IMDb.com,* 962 F.3d at 1122 (holding that actor profiles on defendant's website did not "propose a commercial transaction" even though IMDb "has a financial interest" in maintaining them). The same logic applies to the Professional Directory.

And in *Dex Media*, 696 F.3d at 952, the court held that a city ordinance regulating the delivery of yellow pages was subject to strict scrutiny and violated the First Amendment, because, despite the directory's inclusion of advertisements, "[i]t is . . . readily apparent that telephone listings and community information contained in the directory constitute noncommercial speech," and "that the directories serve more than a commercial purpose." *Id.* at 957. Similarly, in *IMDb.com*, the Ninth Circuit held that a California statute prohibiting a specific category of websites from publishing the ages and dates of birth of actors was subject to strict scrutiny and violated the First Amendment. *IMDb.com*, 962 F.3d at 1116-17. The Ninth Circuit concluded that the "profiles [of actors] . . . found in an online database of information" are noncommercial speech: "[t]he content is encyclopedic, not transactional." *Id.* at 1122; *see also Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 495-97 (1975) (right of privacy does not protect against publication of public records and matters of legitimate interest). This Court should follow these precedents.

Next, the Ninth Circuit has already held that Cal. Civil Code § 3344 violates the First Amendment when applied to private individuals, like Plaintiffs, whose identities do not have economic value. In *Sarve*r, 813 F.3d at 891, plaintiff, a private individual depicted in a movie, brought claims under Cal. Civil Code § 3344, alleging that the movie's creators used his name and likeness without his consent. *Id*. at 896. The court observed that the "[t]he Supreme Court has reviewed the constitutionality of a state's right of publicity law only once, concluding that application of such a law to prevent the broadcast of a performer's entire performance did not violate the First Amendment." *Id*. at 903 (referencing and *citing Zacchini*, 433 U.S. at 563–64). The court noted that "[w]e, [the Ninth Circuit] . . . , have interpreted *Zacchini* to uphold the right of publicity in a variety of contexts where the defendant appropriates the economic value that the plaintiff has built in an identity or performance." *Id.* at 904. In contrast, the plaintiff in *Sarver* "is a private person" who "did not . . . invest time and money to build up economic value in a marketable performance or identity." *Id*. at 905. Thus, the court concluded, he could not show "a compelling state interest in preventing the defendants' speech," and "applying California's right-of-publicity in this case would violate the First Amendment." *Id*. at 906.

Plaintiffs do not allege they are celebrities, public figures, or that they have otherwise invested time and money to build up the economic value of their identities or personas or that their identities are in any way marketable. The Professional Directory merely compiles professional information, largely from public sources. Under *Sarver*, Plaintiffs' proposed application of the Right-of-Publicity Laws violates 6sense's constitutional guarantee of free speech. And "the outcome is the same whether a special commercial speech inquiry or a stricter form of judicial scrutiny is applied." *Sorrell*, 564 U.S. at 571. Even under intermediate scrutiny, Plaintiffs' proposed applications of the statutes must "directly advance" a "substantial" governmental interest. But there is no substantial state interest alleged, nor does one exist, in preventing the publication of professional information about the Plaintiffs. And the statutes' restrictions on 6sense's speech, as Plaintiffs read them, are far more extensive than necessary: there is no reason why the California, Illinois, Indiana and Ohio statutory claims at issue here cannot exempt from their scope incidental uses of an individual's name. *See e.g., Innovative Database Sys. v. Morales*,

990 F.2d 217, 221–22 (5th Cir. 1993) (statute prohibiting businesses from selling accident reports obtained from public agencies failed to withstand intermediate scrutiny because of overbreadth). Under either standard, Plaintiffs' claims fail under the First Amendment.

## IV.    THE CALIFORNIA PLAINTIFFS DO NOT ADEQUATELY ALLEGE A VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL") (COUNT II).

California's Unfair Competition Law, Bus. & Prof. Code § 17200 (the "UCL"), "prohibits, and provides civil remedies for, unfair competition, which it defines as 'any unlawful, unfair or fraudulent business act or practice.'" *Kwikset Corp. v. Superior Ct*., 51 Cal.4th 310, 320 (2011) (citation omitted). Plaintiffs Ambrozewicz and Franke's UCL claim fails for several reasons:

*Actual Loss*. First, the UCL requires Plaintiffs to plead ***facts*** that show an "actual loss of money or property." *Watts v. Enhanced Recovery Corp*., No. 10-CV-02606-LHK, 2010 WL 4117452 at *3 (N.D. Cal. Oct. 19, 2010) (Koh, J.) (dismissing UCL claim); *see also* Cal. Bus. & Prof. Code § 17204. Plaintiffs' naked assertions of harms (*see* Compl. ¶¶ 150-151), do not include *any* facts whatsoever showing loss of money or property. Further, "the 'mere misappropriation of personal information' does not establish compensable damages." *Pruchnicki v. Envision Healthcare Corp*., 845 F.App'x 613, 615 (9th Cir. 2021) (citation omitted); *see also Katz-Lacabe v. Oracle Am., Inc.,* 668 F. Supp. 3d 928, 943 (N.D. Cal. 2023) (Seeborg, J.) (collecting cases). Nor does any "external value" of Plaintiffs' data or likeness establish that Plaintiffs "personally lost money or property," even assuming that 6sense "may have gained money through its sharing or use of the plaintiffs' information." *Hart v. TWC Prod. & Tech. LLC*, 526 F.Supp.3d 592, 603 (N.D. Cal. 2021) (quotation marks omitted); *see also, e.g., Campbell v. Facebook Inc*., 77 F.Supp.3d 836, 849 (N.D. Cal. 2014) (rejecting argument that plaintiffs "have a property interest in their personal information").

*Rule 9(b) Particularly*. Next, to the extent Plaintiffs' UCL claim is premised on "fraudulent" conduct by 6sense, they must meet Rule 9(b)'s heightened pleading requirement. *In re Apple Inc. Device Performance Litig*., 386 F.Supp.3d 1155, 1175-76 (N.D. Cal. 2019) (Davilla, J.). Plaintiffs do not satisfy this high bar by identifying any misleading statement or misrepresentation made by 6sense, or other fraudulent conduct or act by 6sense. *See e.g., In re*

*Zoom Video Commc'ns Inc. Priv. Litig.*, 525 F.Supp.3d 1017, 1046 (N.D. Cal. 2021) (dismissing UCL claim where plaintiffs "fail[ed] to allege who actually saw what misrepresentations/omissions and when and where they saw the misrepresentations or omissions") (quotation marks omitted); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2017 WL 3727318 at *30 (N.D. Cal. Aug. 30, 2017) (Koh, J.).

   *Unlawful and unfair*. Plaintiffs also fail to allege facts showing any "unlawful" or "unfair" conduct by 6sense. Their sole conclusory "unfair" and "unlawful" allegation in the Complaint, Compl. ¶ 150, simply reprises Plaintiffs' right-of-publicity claims, and thus fails because those claims themselves fail. *See Kellman*, 599 F.Supp.3d at 896 n.5 (unlawful claim "rises or falls" with predicate violations). Nor does the claim satisfy the UCL's "balancing" and "tethering" tests because Plaintiffs do not identify any conduct by 6sense that is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," or any facts to show that their alleged harm is outweighed by the utility of 6sense's conduct. *Herskowitz v. Apple Inc.*, 940 F.Supp.2d 1131, 1145–46 (N.D. Cal. 2013) (Koh, J.). "Consequently, Plaintiff[s] fail[] to plead facts to show that [6sense] engaged in an unfair business practice." *Id.* at 858; *see also Gardner v. Health Net, Inc.*, 2010 WL 11597979 at *10-11 (C.D. Cal. Aug. 12, 2010) (dismissing UCL "unfair" claim where plaintiff failed to "make any allegation[] [about] how the gravity of their injuries outweigh the utility of Defendant's actions"); *Marcus v. Apple Inc.*, 2015 WL 151489 at *4 (N.D. Cal. Jan. 8, 2015) (Alsup, J.) (dismissing the unfair prong claim where plaintiffs "merely state[d] in conclusory fashion that Apple's practices 'offend public policy and are unethical, oppressive, unscrupulous'").

   *Adequate remedy at law*. And last, Plaintiffs fail to allege facts "establish[ing] that [they] lack an adequate remedy at law before securing equitable restitution for past harm under the . . . UCL." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). This claim is foreclosed because Plaintiffs are seeking monetary damages for precisely the same conduct, demonstrating that restitution "is not a true alternative theory of relief but rather is duplicative of those legal causes of action." *Loo v. Toyota Motor Sales, USA, Inc.*, 2019 WL 7753448 at *13 (C.D. Cal. Dec. 20, 2019); *see also Zapata Fonseca v. Goya Foods Inc.*, 2016 WL 4698942 at *7–8 (N.D. Cal. Sept. 8, 2016) (Koh, J.). Ambrozewicz and Franke's UCL claim fails.

1

**CONCLUSION**

2

The Court should dismiss the Complaint with prejudice.

3

4

5

Dated:    January 24, 2025                    CLARK HILL LLP

6

7

8

By:    _/s/ Myriah V. Jaworski_

9

Myriah V. Jaworski
Chirag Patel

10

Elizabeth Evans

11

*Attorneys for 6sense Insights, Inc.*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28